1

1        UNITED STATES BANKRUPTCY COURT
         NORTHERN DISTRICT OF TEXAS
2            FORT WORTH DIVISION

3
RICHARD LEE ZIMMERMAN,    .  Adversary No. 09-04237-rfn
4                         .
        PLAINTIFF         .
5                         .  Fort Worth, Texas
V.                        .  Thursday, October 8, 2009
6                         .
JPMORGAN CHASE &          .
7  COMPANY,               .
                          .
8        DEFENDANT         .
. . . . . . . . . . . . .
9


10
IN RE:                    .  Case No. 42327-rfn13
11                        .
RICHARD LEE ZIMMERMAN     .
12                        .
DEBTOR                    .
13                        .
. . . . . . . . . . . . .
14

15                        Hearing on

16       Motion for Default Judgment against Vericrest
         Finance, Inc., fka CIT Group Consumer Finance
17                  filed by Plaintiff

18       Motion to Dismiss Adversary Proceeding
         filed by Defendant JPMorgan Chase Bank, NA
19
         Motion for Default Judgment against
20       JPMorgan Chase & Co. filed by Plaintiff

21

22

23       BEFORE THE HONORABLE RUSSELL F. NELMS
              UNITED STATES BANKRUPTCY JUDGE
24

25

```
 1   APPEARANCES:

 2

 3   For the Plaintiff,         MR. RICHARD LEE ZIMMERMAN
     Richard Lee Zimmerman:     4212 Calloway Drive
 4                              Mansfield, Texas  76063

 5
     For PennyMac:              MS. CRISTINA PLATON CAMARATA
 6                              Brice Vander Linden & Wernick
                                310 Amber Lane
 7                              League City, Texas  77573

 8
     Electronic Court Recorder: MS. JENNIFER CALFEE
 9                              U.S. Bankruptcy Court
                                Eldon B. Mahon U.S. Courthouse
10                              501 W. Tenth Street
                                Fort Worth, TX 76102-3643
11

12   Transcription Service:     MS. DIANE LANCASTER
                                5838 Westhaven Dr.
13                              Fort Worth, TX  76132

14

15
     Proceedings recorded by electronic sound recording;
16   transcript produced by transcription service.

17

18

19

20

21

22

23

24

25
```

1    FORT WORTH, TEXAS, THURSDAY, OCTOBER 8, 2009, 2:28 P.M.

2            THE COURT:  Be seated.  Good afternoon.  At 2:30

3    we have the *Zimmerman* case.  Mr. Zimmerman, you're here

4    and you are representing yourself.

5            MR. ZIMMERMAN:  Yes, I am.

6            THE COURT:  Okay.  And are you Ms. Camarata?

7            MS. CAMARATA:  Yes, I am, Your Honor.

8            THE COURT:  And you are representing?

9            MS. CAMARATA:  PennyMac.

10            THE COURT:  Give me a minute.  PennyMac?

11            MS. CAMARATA:  PennyMac, yes.

12            THE COURT:  All right.  I've read this motion,

13    and before I hear from the parties, I think what I would

14    like to do today is see if we can't get this case in some

15    proper procedural context.  And you may have a seat,

16    Ms. Camarata, as I discuss this.  For his part,

17    Mr. Zimmerman here, he wants closure.  He wants finality

18    with respect to his Motion for Summary Judgment.  Mr.

19    Zimmerman takes issue with PennyMac's participation in

20    this case, because he says they haven't proven that they

21    are a party in this case.  But ultimately, what you want,

22    Mr. Zimmerman, is you want closure, and in order to get

23    closure, you need to have the proper party before the

24    Court.

25            So it would be one thing if we, say, booted

1   PennyMac out of this case and rendered a judgment as to

2   Chase Bank, but Chase Bank has no interest in the case.

3   That doesn't solve your problem.  So if in fact PennyMac

4   is the owner and holder of the note, then they are the one

5   that you want to have bound by the judgment that you seek.

6   So, on your side, in order to get to where you want to be,

7   you need to have the right party before the Court, or else

8   we are all just spinning our wheels here.

9         Now, on PennyMac's side over here, what's

10  happened so far is that PennyMac has filed a motion to

11  dismiss the Plaintiff's complaint here, but PennyMac has

12  filed its motion and said -- and has moved to dismiss, at

13  least in part saying that we should dismiss because

14  JPMorgan is not a party-in-interest in this case.  Of

15  course, PennyMac cannot here today advance the interests

16  of JPMorgan.  It can only advance its own interests, and

17  so, we need to make sure that PennyMac is the right party.

18        So, I think that what -- and then there is

19  another problem that you have on your side of the case,

20  Mr. Zimmerman.  As I understand it, you have filed a

21  Motion for a Summary Judgment or -- well, you've moved to

22  default JPMorgan and you've moved to default Vericrest

23  Finance, formerly known as CIT Group Finance.

24        Let me take up CIT first.  The problem with the

25  motion to default CIT is that your complaint doesn't

1  allege any claims against CIT.  You mention them, but your

2  complaint itself doesn't name them as a party.  And so, I

3  don't know how I can default CIT in light of the fact that

4  they haven't been named as a party.  I don't know if

5  they've been served or if they haven't been served, but I

6  know that your complaint itself doesn't name them as a

7  party.  You say parties, yourself, and Defendant JPMorgan

8  Chase and Company, then you go into your factual

9  allegations.

10          So, I think I can set aside the Motion for

11  Default Judgment against CIT right now, because they are

12  just not a party to this case.  Now, maybe they've been

13  served, but, you know, getting served with something that

14  doesn't name you as a defendant is not really going to be

15  very effective to put you on notice that you need to

16  defend.  So we can't grant that today.  You would need to

17  amend your complaint in order for me to have a default.

18          MR. ZIMMERMAN:  Okay.  That actually is not a --

19  there wasn't a complaint against Vericrest.  Vericrest was

20  just to disallow their proof of claim, and what happened

21  was, CIT is now Vericrest.

22          THE COURT:  Uh-huh.

23          MR. ZIMMERMAN:  And Vericrest, they have a proof

24  of claim, and I was just trying to get that disallowed

25  because their proof of claim is wrong or doesn't apply.

1          THE COURT:  Okay.  So this, the Motion for

2  Default Judgment --

3          MR. ZIMMERMAN:  Was just basically more of a

4  motion to disallow their proof of claim.

5          THE COURT:  But to disallow their proof of claim

6  in the bankruptcy case.

7          MR. ZIMMERMAN:  Right.

8          THE COURT:  As part of your adversary complaint,

9  though, you indicate that they also have a lien on the

10 property.

11         MR. ZIMMERMAN:  They do not have a lien.  They

12 had a lien, but no longer.

13         THE COURT:  Okay.  Do they agree with the notion

14 that they don't have a lien, or did they file a secured

15 proof of claim?

16         MR. ZIMMERMAN:  No, what happened was, they

17 actually filed a secure proof of claim, a secured proof of

18 claim, except they used -- probably we ought to just --

19         THE COURT:  Okay.  Well, don't worry about that.

20 Let me go into something here with that.  In this district

21 -- and this all gets back to what it is that you want to

22 do and accomplish in this adversary proceeding.  In this

23 district, there is a decision by Judge Houser, Chief

24 Judge, the Chief Bankruptcy Judge of this District, to the

25 effect that when you object to the claim of a secured

1  creditor in your Chapter 13 bankruptcy case, and that

2  objection is sustained, the effect of that is, is that

3  they don't get to participate in your bankruptcy case.

4  They get no distributions in your bankruptcy case at all.

5  But assuming that they have a good perfected lien, your

6  objection to their claim doesn't make the lien go away.

7          That's a case called *Kleibrink* that was decided

8  by Judge Houser.  It's now up at the Fifth Circuit.  It's

9  been argued, I believe, before the Fifth Circuit and we

10  can expect a ruling from them sometime in the next 12

11  months.  I don't know when we're going to get that.  But

12  that comes back to, you know, what do you want with

13  respect to CIT?  If you want to make CIT's claim go away,

14  then according to the *Kleibrink* case, they need to be in

15  an adversary proceeding as well.  So if you want to make

16  their claim go away, we can make their claim go away

17  because they didn't respond to your objection to their

18  claim.  And I take it that's what you mean by this Motion

19  for Default Judgment.

20          MR. ZIMMERMAN:  Right.

21          THE COURT:  Okay.  So we don't grant default

22  judgments when it comes to these.  It's just what we do,

23  is that we enter an order sustaining an objection to

24  claim.

25          MR. ZIMMERMAN:  Okay.

1          THE COURT:  So if you've done that, then we'll --

2    and they haven't answered and they haven't responded, then

3    we'll sustain an order to disallowance of their claim in

4    this case, but that may be of limited value to you.  Okay?

5          MR. ZIMMERMAN:  Okay.

6          THE COURT:  Have you done the same thing with

7    JPMorgan Chase?

8          MR. ZIMMERMAN:  No, JPMorgan Chase was an

9    adversarial complaint.

10          THE COURT:  Okay.  So, in that case, you really

11    do want a default judgment against them.

12          MR. ZIMMERMAN:  Yes.

13          THE COURT:  Well, we can probably grant a default

14    judgment against JPMorgan Chase Bank, but in light of the

15    fact that JPMorgan Chase Bank doesn't -- isn't the owner

16    and holder of the note anymore, at least according to

17    Penny Bank, I don't know that that's going to get you

18    where you want to be.

19          Here's what I think needs to happen in the

20    adversary proceeding.  Assuming that Penny Bank contends

21    that it is in fact the proper party in this case, then

22    they can file a motion to intervene in the case, to be

23    substituted as a defendant in the case for JPMorgan.  And

24    we can put that in the record, and they may officially

25    become a Defendant in the case.

1          Now, you know, at that point, Mr. Zimmerman, I

2  guess you've got a choice to make.  You can either say,

3  "Gee, I don't really think that they are the defendant in

4  this case.  I don't think that they really are the proper

5  person and I want to fight their assertion that they are

6  the proper person," or you can just accept the fact that

7  they contend that they are the proper party in this case,

8  and that by prosecuting your case against them, that you

9  will get the degree of finality that you want.  It's kind

10  of up to you.

11          Now, I don't know why Penny Bank would

12  voluntarily want to come into this court and to fight this

13  thing if they didn't really have any interest in it.  You

14  know, there may be things out there that I don't know

15  about or just plain don't understand.  But usually it is

16  not the case that parties who don't have an interest in

17  litigation want to be involved in it.  Usually, it's just

18  the opposite.

19          So you can challenge Penny Bank's entitlement to

20  be a party in this case if you want to, or you can just,

21  in response to their motion to be substituted as a party,

22  you can accept the fact that they are the proper party in

23  interest and resolve it that way.  Okay?

24          MR. ZIMMERMAN:  Okay.

25          THE COURT:  But I think the first thing that

1  needs to happen, and I don't know, you can tell me, Ms.

2  Camarata, maybe -- I mean, maybe you don't want to file a

3  motion to intervene, but the fact that you are here in

4  court today tells me that you are concerned enough about

5  the procedural posture of this case that you think you

6  need to be in the case in order to protect your interests.

7  Am I right about that?

8         MS. CAMARATA:  That's correct, Your Honor.  It

9  was kind of convoluted how the loan came, and so PennyMac

10  wasn't exactly sure when I filed the motion.  They just

11  wanted to have the adversary heard.  There are some

12  current state court actions in the state of Colorado

13  regarding this property as well, and actually, probably

14  the best thing would be to remove those up to federal

15  court and have it all in one thing.

16         Both CIT and PennyMac are involved in the state

17  court litigation as well, and so that's kind of how it

18  came to me, is PennyMac was in the state court litigation.

19  PennyMac found out about this one, and the attorney in

20  Colorado wanted me to file something in this one.  I

21  couldn't file an answer since I don't represent JPMorgan

22  Chase, so I filed a motion to dismiss.

23         THE COURT:  Okay.  What do you think about CIT,

24  Mr. Zimmerman?  I take it that you would like to get some

25  type of final disposition as to them as well, right?

1    MR. ZIMMERMAN:  Yes, they -- on their proof of

2 claim, I would like -- actually, this is -- probably the

3 best thing for me to do is, I can start from where --

4 because, you know, she is not familiar with it.  I've been

5 living this thing for three years.  Actually, we financed

6 my home on October 14th, 2005.

7    THE COURT:  Yeah, I've read all the pleadings.  I

8 know what's going on.  I understand the allegations in

9 your complaint and what you're seeking here.

10    MR. ZIMMERMAN:  Okay.

11    THE COURT:  But part of what you say in your

12 complaint is, you say that First National Bank of Arizona

13 and CIT Group failed to timely deliver the material

14 disclosures.  That indicates to me that CIT Group probably

15 ought to be a party in this case.  So I think that what

16 you need to do is, you need to -- you need to file an

17 amended complaint, and if you want to keep JPMorgan in

18 here as a defendant in your amended complaint, you could

19 do it.  You could add Penny Bank, you could add CIT, and

20 you can seek declaratory relief with respect to all of

21 those parties.  Now, once you file that complaint, the

22 summons and a scheduling order are going to have to be

23 filed -- have to be served, not only on Penny Bank, but

24 you'll need to serve it on CIT Corp.

25    MR. ZIMMERMAN:  Okay.

1       THE COURT:  And once that happens, one of those

2   new defendants probably would want to, and maybe it's Ms.

3   Camarata's client, to remove the state court cases that

4   are out in Colorado to the federal, whatever district they

5   are pending in, federal district court or bankruptcy court

6   in Colorado, and move to have them transferred here to

7   this Court.  And I can't think of any reason why either

8   the district court or the bankruptcy court would deny

9   that.

10      MR. ZIMMERMAN:  Well, actually, I got a notice, I

11  think, that the state court action was dismissed earlier

12  this year for lack of prosecution.

13      THE COURT:  Okay.  So then there may not be

14  anything to remove.  If there is something active to

15  remove, it can be removed.  If there's not, it's not.  But

16  those claims and causes of action, to the extent that they

17  involve you one way or the other, are probably stayed

18  anyway.  And so, it may very well be that upon further

19  analysis, that there is no need to remove them because we

20  can, in this court, deal with all of these issues, and by

21  dealing with them here, it might moot anything that's

22  pending in state court which is otherwise stayed by virtue

23  of the automatic stay in your bankruptcy.

24      So, I think that that's what we need to do.

25  There doesn't need to be -- and you can make other changes

1   to your amended complaint if you want to, Mr. Zimmerman,

2   but I think that the key thing that you need to do is to

3   add these two new entities, make sure that they get served

4   with a copy of your complaint, and see how they respond.

5   It may very well be that PennyMac at that time comes in

6   here and makes the exact same -- argues the same motion to

7   dismiss that they've urged today.  But right now, they are

8   not really a party in the case, and so they can't really

9   come in and say the motion is not well taken as to

10  somebody who is a party.

11          So, I think ultimately what the parties all want

12  is the same thing, and that is a final, effective

13  resolution of this issue.  If we took care of JPMorgan

14  today, I can't even tell you what effect that may or may

15  not have.  Is it binding on successors in interest,

16  especially if they appear here?  I don't know.  It may be

17  or it may not be.  All I know is, that would make some

18  interesting issues for an appeal somewhere down the line.

19          I just think it's in the best interest of

20  everybody to have all the right parties in front of this

21  Court, who are here procedurally, and then, one way or the

22  other, one side will prevail, but it will all be right

23  here, and if the other side doesn't like it, we know --

24  they all know where the proper appeals court is.  It

25  happens to be right across the hall.

1          So, that will just make it a lot easier, and

2     then, that way, all parties can get the degree of finality

3     that they seek.  Okay?  But the starting point for that

4     is, I think, Mr. Zimmerman, for you to file an amended

5     complaint, serve your amended complaint, and then for us

6     to take up any answers or motions to dismiss in the

7     context of that amended complaint that have the proper

8     parties in this court.  Okay?

9          Now, I will say one other thing to Ms. Camarata

10    here.  I know that this whole MERS system is confusing, to

11    say the least.  Just one thing I noticed about the MERS

12    assignment of mortgage is that MERS, as nominee for

13    PennyMac Loan Services, LLC, assigned the loan to PennyMac

14    Loan Services, LLC.

15         MS. CAMARATA:  Correct, Your Honor.  MERS is just

16    kind of like a holding tank for all these notes and deeds

17    of trust.  I do have with me the actual allonge to the

18    note from the FDIC.  I have a copy for Mr. Zimmerman.  I

19    have a copy for the Court, if you want to put that in the

20    file.

21         THE COURT:  For right now, I think all you need

22    to do is satisfy Mr. Zimmerman.  If he's not satisfied,

23    then we can take up that issue at the appropriate time.

24    But the only thing about that is, I just didn't know -- I

25    don't know why, and I understand -- I understand how MERS

1  is supposed to work.  I know it's been a very confusing

2  system for courts throughout the country.  I just didn't

3  know why Penny -- in effect, PennyMac Loan Services would

4  need to assign it to PennyMac Loan Services.

5         MS. CAMARATA:  PennyMac actually acquired the

6  loan in December of 2008.  It wasn't until after that that

7  they got the assignment into MERS, so that's why they were

8  doing it as attorney for itself.

9         THE COURT:  Okay. I see.  Oh, okay.

10         MS. CAMARATA:  Because the other entities were

11  already gone by that time.

12         THE COURT:  So there --

13         MS. CAMARATA:  But it came -- you know, it had to

14  go through the receivership.  It went back and forth from

15  the receiver to the -- to either Nevada or Arizona.  I

16  can't remember right now, although I've got all the

17  allonges.  So this note has been back and forth a couple

18  of times, and there is nobody there any longer at either

19  Nevada or Arizona.  They both went into the receivership,

20  and so that's why they did the assignment, and they just

21  recently did that assignment, the MERS assignment.

22         THE COURT:  Okay.  Yeah, now I understand what

23  you're trying to say about that.  Well, I have -- a close

24  friend of mine is an employee of Fannie Mae, and we

25  happened to be talking about the whole MERS system just on

1  Saturday of last week.  So, believe me, I know the issues

2  with that.

3          MS. CAMARATA:  You know more than you need or

4  wanted to know.

5          THE COURT:  That's right.  Okay.  Okay, Mr.

6  Zimmerman, do you have a sense now of what you need to do?

7          MR. ZIMMERMAN:  Yeah.

8          THE COURT:  Okay.  If you will do that, and how

9  long do we need to --

10          MR. ZIMMERMAN:  The thing that -- the thing that

11  is so confusing for me is that there really, MERS -- MERS,

12  once the loan was rescinded back in March of 2006 when

13  JPMorgan Chase actually was the assignee from First

14  National Bank of Arizona, basically that security

15  interest, that deed of title, is void by law, so that ends

16  their participation at all in this.  But I think what I

17  will do is, I will amend the complaint, because this loan

18  ended on March 4th, 2006.

19          THE COURT:  I understand that's your position,

20  sure.

21          MR. ZIMMERMAN:  And so what happens, if that did

22  happen, then any assignments after that, anything that

23  happened after JPMorgan Chase owned that loan, are void.

24  It ends with JPMorgan Chase.  There is no way it can go

25  any further because there's nothing to get.

1      THE COURT:  Then you can keep JPMorgan Chase in

2   there, and then at the appropriate time, we will, if they

3   don't want to answer and respond to this, then we'll

4   default JPMorgan Chase out of this, and so, I mean, they

5   will be taken care of.  But we have another party in here

6   who is saying that we really do own this note and hold the

7   note --

8      MR. ZIMMERMAN:  Yeah.

9      THE COURT:  -- and we don't want to be prejudiced

10   by anything that happens in this case as to JPMorgan

11   Chase.  And so, you know, believe me, if you've got

12   somebody out there taking that position, and if you are

13   right, then you want your judgment to take care of them as

14   well, right?

15      MR. ZIMMERMAN:  Right.

16      THE COURT:  Okay.

17      MR. ZIMMERMAN:  And then, also, I just want to go

18   on the record that, in their Motion to Dismiss, they said

19   in paragraph, I think it was paragraph -- I don't want to

20   -- I'm going to check my notes real quick -- in paragraph

21   2 that was filed -- no.

22      THE COURT:  Yeah, I recall that you said in your

23   Motion to Strike --

24      MR. ZIMMERMAN:  Yeah, they -- because what

25   happened is, the FDIC didn't take -- didn't get this loan

1    until July 28th.  So JPMorgan Chase was actually the

2    holder when it was rescinded.

3          THE COURT:  You know what you have happen a lot

4    of time here, and especially with mortgages these days and

5    notes and all of the assignments that go back and forth,

6    and then you've got an intervening receivership by the

7    FDIC somewhere along the line here, you have parties and

8    ultimately lawyers who are out there struggling to do the

9    same thing you are trying to do, Mr. Zimmerman, to figure

10   out who is on first and how did we get to where we are

11   here.  So they are operating on the best information that

12   they have.  Now, you know, I don't purport to speak for

13   Ms. Camarata in saying that, but the fact of the matter

14   is, is that, you know, as I say, normally you don't have

15   parties coming in here wanting to be part of a fight in

16   which they are not even named as a party.

17          So I think, I would imagine, but I can always be

18   proven wrong, and I keep my mind open as to this stuff,

19   but I usually give people the benefit of the doubt until

20   proven otherwise, and that is, I usually assume that they

21   are all doing the best that they can based upon the

22   information that they have at that particular time.  And

23   if I'm wrong about that, then I'm always prepared to say

24   I'm wrong about it and just take appropriate measures to

25   cure that problem.  But I would bet you that -- I bet you

1  there has been a lot of rushing around behind the scenes

2  here with respect to note holders and the like, trying to

3  figure out just what's going on and who has what, because,

4  believe me, been there and done that and I know how this

5  stuff works.  So, as I say, if it's wrong and we have some

6  violations of Rule 11 here, we'll deal with it at that

7  appropriate time, but we'll just have to see.

8          MR. ZIMMERMAN:  Yeah, that's actually been my

9  frustration for three years, is, this seems like a hot

10  potato.  I've rescinded the loan.  It's moved from -- I

11  mean, I have like copies of allonges that -- it's just --

12          THE COURT:  It's not a hot potato anymore, Mr.

13  Zimmerman, because I've caught the potato and I'm holding

14  the potato right here.

15          MR. ZIMMERMAN:  Okay.

16          THE COURT:  And I'm not passing it on to anyone

17  else.  This issue is going to be resolved in this Court.

18          MR. ZIMMERMAN:  Okay.

19          THE COURT:  Okay?

20          MR. ZIMMERMAN:  I appreciate that.

21          THE COURT:  All right.

22          MR. ZIMMERMAN:  Thanks.

23          THE COURT:  Okay, thank you.  We'll be adjourned.

24

25              (Proceedings adjourned at 2:52 p.m.)

1

2          I certify that the foregoing is a correct transcript

3    from the electronic sound recording of the proceedings in

4    the above-entitled matter.

5

6

/s/Diane Lancaster                    November 18, 2009
7    Diane Lancaster                          Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25