```
 1                    IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE NORTHERN DISTRICT OF TEXAS
 2                            FORT WORTH DIVISION

 3
      In re:                         )   Case No. 09-42327-rfn13
 4                                   )
      RICHARD LEE ZIMMERMAN,         )   Fort Worth, Texas
 5                                   )   July 14, 2010
              Debtor.               )   1:30 p.m. Calendar
 6    _____)
                                     )
 7    ZIMMERMAN,                     )   Adversary No. 09-4237-rfn
                                     )
 8            Plaintiff,             )
      v.                             )   MOTIONS TO DISMISS ADVERSARY
 9                                   )   PROCEEDING FILED BY PENNYMAC
      J.P. MORGAN CHASE & COMPANY,   )   LOAN SERVICES [#56] AND FNBN1
10    et al.,                        )   [#55]
                                     )
11            Defendants.            )
      _____)
12
                         TRANSCRIPT OF PROCEEDINGS
13               BEFORE THE HONORABLE RUSSELL F. NELMS,
                    UNITED STATES BANKRUPTCY JUDGE.
14
      APPEARANCES:
15
      For the Debtor:            St.Clair Newbern, III
16                               Clayton Everett
                                 LAW OFFICES OF ST.CLAIR NEWBERN
17                                 III, P.C.
                                 1701 River Run, Suite 1000
18                               Fort Worth, TX  76107
                                 (817) 870-2647
19
      For PennyMac Loan Services Cristina Platon Camarata
20    and FNBN1:                 BRICE VANDER LINDEN & WERNICK
                                 310 Amber Lane
21                               League City, TX  77573
                                 (281) 686-1446
22
      Court Recorder:            Amanda Shelby
23                               UNITED STATES BANKRUPTCY COURT
                                 510 W. 10th Street
24                               Fort Worth, TX  76102
                                 (817) 333-6014
25
```

```
 1   Transcription Service:        Kathy Rehling
                                   209 Bay Circle
 2                                 Coppell, TX  75019
                                   (972) 304-1998
 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25          Proceedings recorded by digital sound recording;
              transcript produced by transcription service.
```

1           <u>FORT WORTH, TEXAS - JULY 14, 2010 - 1:59 P.M.</u>

2           THE COURT:  All right.  Okay.  Let's do that.  We'll

3   turn to, let's see, this is the Zimmerman case.  All right.

4   And we'll get back to you.  Okay.  Zimmerman?

5           MR. NEWBERN:  Good afternoon.

6           THE COURT:  Good afternoon.

7           MR. NEWBERN:  St.Clair Newbern III and Clayton Everett

8   for Plaintiff Richard Lee Zimmerman.

9           MS. CAMARATA:  Christina Camarata for FBNB and for

10  PennyMac.

11          THE COURT:  Okay.

12          MS. CAMARATA:  FNBN.  I had that wrong.

13      I think probably the easiest one to do would be the motion

14  to dismiss against FNBN, because that one is pretty much cut

15  and dried.  Don't you agree?

16          MR. NEWBERN:  Sure.

17          THE COURT:  Okay.

18          MS. CAMARATA:  In that motion to dismiss, Your Honor,

19  what we're saying is that the allegations in the petition are

20  really, really vague as to any cause of action against FNBN.

21  What they were was just an intermediary.  After the originating

22  lenders went into receivership with the FDIC, the FDIC created

23  this corporation, FNBN, to hold the assets.  It was a short-

24  term thing pursuant to what the FDIC normally does when it

25  takes over failed banks.  It opens up another bank immediately

1 │ so that nothing stops working and that the assets are properly

2 │ taken care of and the liabilities are done.  And then FNBN then

3 │ transferred the asset to PennyMac and actually sold the assets

4 │ to PennyMac.

5 │    In the petition, there really are no causes of action other

6 │ than FNBN was in the chain of title.

7 │          THE COURT:  Mr. Newbern?

8 │          MR. NEWBERN:  Your Honor, when we were here, before

9 │ we've amended our complaint, at that time, the Court told me to

10 │ sue everybody we could find in the chain of title, and we did.

11 │ We found FNBN1 in there with one or two transfers.  It was

12 │ unclear who -- how they got their interest and why they were

13 │ transferring it to PennyMac.

14 │    We recently saw the original documents.  In fact, we were

15 │ here Monday on a motion for continuance that Judge Lynn

16 │ granted.  And we saw the documents and we found the document

17 │ that was signed by FNBN1.  The gentleman who signed that on

18 │ behalf of FNBN1 is Mr. -- is it Tomescu?  Is that --

19 │          MS. CAMARATA:  His name is Tomescu.  I don't know that

20 │ he signed that on behalf of --

21 │          MR. NEWBERN:  He did.

22 │          MS. CAMARATA:  No.  Actually, an M.J. Lauer from the

23 │ FDIC signed it on behalf of the FDIC into FNBN.

24 │          MR. NEWBERN:  My mistake.  Anyway, we are trying to

25 │ schedule the deposition of Mr. Tomescu, who is the only witness

1  that the Defendant PennyMac has indicated they would call at

2  the trial, to try to fill in all the holes.

3      And it may be that if FNBN1 doesn't assert a claim against

4  this property or a lien on the property or interest in the

5  note, we may be able to eliminate them.  But it's not something

6  that we can do right now.  The claim against them would be the

7  same one that we assert against PennyMac, just they were an --

8  as counsel says, they were an intermediary.  I didn't

9  understand that until the other day when we were looking at the

10  documents and that was explained to me, that was their role.

11          THE COURT:  How about that, Ms. Camarata?  If we

12  dismissed FNBN1, is there any possibility that FNBN1 would come

13  back at some later point and say, "Listen, as it turns out, we

14  were this necessary party.  We had to be added because we had

15  some interest in the property, and so therefore the Court can't

16  grant complete relief in this case without us being a party"?

17  Is their position that they have no interest in this

18  whatsoever?

19          MS. CAMARATA:  That is their position, Your Honor.

20  They have no employees at that corporation.  And actually,

21  under some of the Codes -- and if I can approach for just a

22  moment, Your Honor?

23          THE COURT:  Okay.  Sure.  Oh, you can give that to me.

24  Thank you.

25          MS. CAMARATA:  The reason I'm giving that to you, Your

1    Honor, is under the tab marked D-4, there are the allonges, two

2    -- the original allonges, which I also have the ones with me

3    that Mr. Newbern referenced as of Monday.  And he's seen all

4    these.  They've been produced in discovery.  They completely

5    gave away and sold to PennyMac any claim that they had to this

6    asset.  Moreover, because it came from the FDIC, there really

7    are no allegations that could be held against FNBN or that FNBN

8    could have against the property itself.

9        PennyMac is the holder.  We've got the original note.  We

10   have the original deed of trust that PennyMac does hold.  So I

11   really don't see any way that FNBN could come back into it.

12       And it should be dissolved, if it hasn't been dissolved

13   already.  And that's in 12 U.S.C. 1821, I believe.  It talks

14   about the FDIC and the subsequent corporations and how long

15   those periods last.  And it's usually for a period of two years

16   after they take over.  And then, depending upon if there's an

17   extension, they can do extensions for up to three years.  But

18   the whole purpose of that really is an intermediary institution

19   and not something that's going to hang around.

20           MR. NEWBERN:  Well, Your Honor, the last two documents

21   which counsel represents are allonges are interesting in that

22   one of them is apparently signed in blank and then they've

23   produced another one where somebody's filled in the name of

24   PennyMac.  I --

25           MS. CAMARATA:  Well, Your Honor, the reason I gave

1  those to you is because that's how it is in the original file

2  that Mr. Newbern reviewed earlier this week.  It looks like

3  they were endorsed in blank and then PennyMac later -- either

4  PennyMac or FNBN put in the name of PennyMac into that allonge.

5  And that's in the very next tab to you, Your Honor.  That one

6  wasn't included with the original allonges.

7       MR. NEWBERN:  Are you telling me that if I had this

8  first one that I could just fill my name in on it?

9       MS. CAMARATA:  If you had the original document.  It's

10  endorsed in blank, yes.

11       MR. NEWBERN:  Well, I would like to inquire of FNBN1

12  maybe a limited discovery as to how these documents got moved.

13  But when you've got two documents that purport to be original

14  allonges and one of them's got a blank, a blank in it that's

15  signed, and another one that's got the same document that

16  someone's filled the name in, I think we -- I'd like to know

17  who filled that in and when they did.

18    She mentioned two years.  These are dated December 29,

19  2008.  I think our lawsuit was certainly filed within two

20  years.  It seems like to me we should be able to keep FNBN1 in

21  here to find out what their claim is, and if --

22       THE COURT:  But if you've gotten against FNBN a

23  concession on the record here that they have no claims to the

24  property, to the note, no interest in them, no liens, haven't

25  you gotten everything that your lawsuit, at least as to FNBN,

1   would ask?

2              MR. NEWBERN:  If --

3              THE COURT:  And I mean, it's one thing to want

4   discovery.  I can understand wanting discovery, and there's

5   nothing about this that precludes discovery.  But --

6              MR. NEWBERN:  Well, except there's -- it's a little

7   easier to take discovery of a party than a nonparty.  And if

8   they're dismissed, --

9              THE COURT:  Well, I know that, but you can't go out

10  and name a bunch of nonparties as parties just because

11  discovery would be easier.  And I understand why you did it the

12  way you did it the first time around, but I'm just saying, if

13  they don't claim any interest in anything in this case now, I

14  don't know how we could keep them in the case just because it

15  would make discovery easier against them if we did it that way.

16             MR. NEWBERN:  If the --

17             MS. CAMARATA:  And actually, Your Honor, there are no

18  employees of that corporation.  So I wouldn't even have anybody

19  that I could present at a deposition.

20             MR.  NEWBERN:  Well, it says that this M.J. Lauer is

21  its member.  We might not want to depose our employees, but we

22  might want to depose Mr. Lauer.

23             THE COURT:  Of course, you can always depose Mr. Lauer

24  if you can find him.

25             MR. NEWBERN:  Well, --

1           THE COURT:  Do we know where Mr. Lauer is?

2           MS. CAMARATA:  I believe he was with the FDIC, Your

3  Honor.

4           MR. NEWBERN:  Well, Your Honor, I'd like to keep FNBN1

5  in here until we have an opportunity to depose him, and it's

6  clearly easier to depose a party.  If they can't produce a

7  party, that may resolve it.  But it seems like --

8           THE COURT:  See, but if they couldn't produce a party

9  and, say, they failed to otherwise properly respond to

10 discovery and we kept them in the case, then you essentially

11 get what we're getting here today, which is a ruling in essence

12 that they have no interest in the property.

13          MR. NEWBERN:  Well, --

14          THE COURT:  They've got no interest in the property.

15 They've got no claims against Mr. Zimmerman.  Because that

16 would be the basis upon which I would dismiss the claims

17 against them, is the concession by their counsel that they have

18 no claims, no interest, no liens, no nothing.

19     And so since, Ms. Camarata, I think that's what you're

20 saying, --

21          MS. CAMARATA:  That is what I'm saying, Your Honor.

22          THE COURT:  -- then I'm going to grant --

23          MS. CAMARATA:  And they did not sue the FDIC, who is

24 also an intervening party, and it basically would be the same

25 situation.

```
 1              THE COURT:  All right.

 2              MR. NEWBERN:  So that's a no nothing -- a no nothing

 3   judgment against them?

 4              THE COURT:  So the motion is granted, and it's granted

 5   -- and I'm granting it on the basis that Defendant has no

 6   claims against Mr. Zimmerman and asserts no interest against

 7   any property of the Plaintiff.

 8              MR. NEWBERN:  Would you like me to prepare an order?

 9              THE COURT:  And, yes, short of just an absolute

10   judgment to that effect, I don't think it can get much better

11   than that.

12              MR.  NEWBERN:  Okay.

13              THE COURT:  Call it a victory, Mr. Newbern.

14              MR. NEWBERN:  I'm sorry?

15              THE COURT:  I said you can call that a victory.  I

16   realize it may --

17              MR. NEWBERN:  We don't know when we're done.

18              THE COURT:  Okay.

19              MS. CAMARATA:  Thank you, Your Honor.

20              THE COURT:  All right.  Now, the motion to dismiss --

21              MS. CAMARATA:  Against PennyMac.

22              THE COURT:  -- PennyMac.

23              MS. CAMARATA:  And the basis for this motion is a

24   little bit different, Your Honor.  Basically, there are four

25   causes of action -- well, five, including damages -- and most
```

1    of those causes of action had to do with actions by the

2    originating lender.  In addition, most of those causes of

3    action had to do with causes of action under TILA, Regulation

4    Z, and some of the federal debt laws, finance laws.

5        All of those have statutes of limitation, and all of those

6    allegations are barred because they weren't brought in time.

7    The originating note was signed on October the 14th, 2005.

8    This lawsuit was filed originally until July 1st of 2009.

9    There are both one-year statute of limitations and three-year

10   statute of limitations under the various rulings and causes of

11   action brought by the Plaintiff.  The causes of action then

12   expired either October 14, 2006 or October 14, 2008, almost a

13   year before the adversary was filed.

14       Even if those statutes of limitation weren't in there,

15   however, because the originating lender went into receivership

16   with the FDIC, 12 U.S.C. 1821 comes into play.  And under

17   1821(d)(13)(D)(ii), --

18           MR. NEWBERN:  It looks like exciting reading.

19           MS. CAMARATA:  Doesn't it, though?  And that's a copy

20   -- you have a copy of that as well, Your Honor, at #1.  It

21   states that if he doesn't perform his administrative remedies

22   first, then he's barred from bringing those causes of action.

23   And there was no complaint ever made to the FDIC, and that

24   statute has also run.

25       Therefore, we don't believe that he can bring these causes

1   of action in this case.

2       Moreover, according to the complaint that was filed, a lot

3   of the issues that the Plaintiff is complaining about

4   surrounded the origination.  He said he was told this, he was

5   told that.  However, none of that really matters.  We have a

6   statute of frauds problem as well as 12 U.S.C. 1823 that says

7   that anything that goes into receivership then has to be in

8   writing.  And that's under 12 U.S.C. E -- (a), (b), (c) and

9   (d).

10      The only thing in writing is the original note, the

11  original deed of trust, signed by both Mr. Zimmerman and the

12  originating lenders.  I have those.  There is nothing else in

13  writing that was in the file when the FDIC took it over, except

14  for the allonges, which I've also produced to Mr. Newbern, and

15  I've got a copy of those as well with me here today.

16      The only other allegations in the complaint, Your Honor,

17  are standing as to who's the owner and holder of the note.  My

18  client owns the note.  They have the original note.  They have

19  the original deed of trust.  We've shown those to the

20  Plaintiff.  We have all the allonges into them.  The only

21  assignment -- this was originally a MERS loan, and it's on the

22  second page of the deed of trust, and MERS did assign it into

23  PennyMac as well.

24      Therefore, there's really nothing left in the complaint

25  that can be brought against PennyMac, and for that reason we're

 1   asking that the case against PennyMac be dismissed.

 2            THE COURT:  Mr. Newbern?

 3            MR. NEWBERN:  First of all, Your Honor, as we pointed

 4   out in our amended response, all of these matters that they're

 5   raising were waived when they filed their answer before they

 6   filed their motion.

 7            THE COURT:  Now, did they file them on the same day?

 8            MR. NEWBERN:  No, sir.

 9            THE COURT:  Okay.  I thought that's what the --

10            MR. NEWBERN:  The answer was filed April 13th, and

11   after the -- and after that they filed a motion to dismiss, --

12            THE COURT:  Okay.

13            MR. NEWBERN:  -- which was subsequent to that.

14            THE COURT:  Okay.  And what date did they file the

15   motion to dismiss?

16            MR.  NEWBERN:  Docket #53 was the answer.  The motion

17   to dismiss is Docket #56.

18            THE COURT:  Okay.  So the answer was filed on the 13th

19   and the motion to dismiss was filed on the 20th?  Okay.

20            MR. NEWBERN:  Under the case law that we've cited in

21   our response, they've waived their right to raise these motions

22   to dismiss.

23       I think that part of what Ms. Camarata said is correct.

24   Clearly, Cause of Action #4, which covers Paragraphs 93 to 130,

25   is out because those relate to parties who have been dismissed

 1  from the lawsuit:  Mr. Lobus, Vericrest Financial, and Deutsche

 2  Bank.  Chase Bank still remains.  I've been contacted by

 3  counsel for Chase, and they haven't filed anything.  I think

 4  they're going to be out as well.

 5      But we do have issues that are clearly set forth in our

 6  complaint in -- I think it's Part 4.  I'm sorry, the second

 7  cause of action, Paragraphs 78 through 85, which raise the

 8  issue about the validity and priority of liens.  We've not had

 9  an opportunity to depose PennyMac about the allonges.

10      I would point out to the Court that when we examined the

11  allonges on Monday, none of the allonges were attached to the

12  note.  And I believe the law is fairly clear that, for an

13  allonge to be effective, it has to be affixed to the note.  And

14  the copies of what purported to be originals and copies of what

15  we were given all -- in some cases appear to be different.

16  They'll show two-hole punches at the top.  Some of them show

17  none at all.  There's information written on them that are not

18  on others.  And I question the authenticity of the documents.

19  I also question the authenticity of the documents because of

20  the stamped signatures.  If you look at the --

21          MS. CAMARATA:  And you have copies of those, Your

22  Honor.  They're copies of the original documents.  It should be

23  like 5, 6.  And I also have the originals here in court if

24  you'd like to see them, Your Honor.

25          MR. NEWBERN:  The documents are -- have stamped

1  signatures on them.  There's no evidence of any authorization

2  for the use of the stamp.  There's no information that tells us

3  that Amy Hawkins was the Assistant Vice President of First

4  National Bank of Arizona on the date that her name was stamped

5  on the document.  In fact, none of the allonges appear to be

6  original signatures.  The allonge to the note from Bank of

7  Nevada shows Amy Quintero.  And if you look at the signatures,

8  they're exactly the same, which to me indicates that they are

9  stamped.

10     And I know there are ways to use stamps, but we question

11  the authenticity of those documents.  And just providing us

12  copies of the allonges that aren't attached to the note does

13  not entitle the Defendant here, PennyMac, to have this case

14  dismissed against them.

15          THE COURT:  Did you want to respond to the statute of

16  limitations arguments?

17          MR. NEWBERN:  I think the other cause of action -- I

18  think the only cause of action that remains is the validity and

19  priority of their lien.

20          THE COURT:  Okay.  So that would be the second cause

21  of action?

22          MR. NEWBERN:  Yes, sir.

23          THE COURT:  And you would agree that the, I guess the

24  TILA violation, the first cause of action, would be barred by

25  limitations?

1          MR. NEWBERN:  I believe they are.

2          THE COURT:  The third cause of action is -- I guess

3     they're out of the case, right?

4          MR. NEWBERN:  It is moot because Vericrest and

5     Deutsche Bank have been dismissed from -- we've settled with

6     them and they were dismissed and they've released their

7     judgments that they obtained up in Colorado.

8          THE COURT:  Okay.  How about the fourth cause of

9     action?

10          MR. NEWBERN:  That relates to Mr. Lobus and Deutsche

11     Bank and Vericrest, and they're out.  So the only thing we're

12     left with is the second cause of action.  And I think our

13     pleading there is sufficient to --

14          THE COURT:  Okay.  Well, I will grant the motion to

15     dismiss as to all causes of action except for the second cause

16     of action.  The second cause of action does state a claim for

17     relief on its face.  There might be evidence, and maybe it's

18     even the evidence that's included here within the Plaintiff's

19     exhibits, but those are exhibits, really, that go outside of

20     the four corners of the pleadings, which means that we really

21     have to rely upon extrinsic evidence, which is more in the

22     nature of a summary judgment as opposed to a motion to dismiss.

23          Moreover, the Court does agree that under Rule 12, as

24     incorporated into adversary practice by Rule 7012, the motion

25     to dismiss basically cannot be filed after the filing of an

1    answer.  And for that reason alone, the Court would have to

2    deny the motion to dismiss the second cause of action.

3        But in light of the fact that the Debtor is conceding that

4    all the other causes of action should be dismissed, then the

5    Court will grant the motion except as to the second cause of

6    action.

7            MR. NEWBERN:  Okay.

8            MS. CAMARATA:  That's fine, Your Honor.  We'll go

9    ahead and do a summary judgment, then.

10       The Court does have discretion to convert the motion to

11   dismiss to a summary judgment, if it likes.  And basically, the

12   second cause of action was that we have not been able to

13   produce the original note or deed of trust, and we do have

14   that.

15           THE COURT:  Well, I could do that, but if I'm going to

16   convert the motion to dismiss to a motion for summary judgment,

17   I'd have to do so on some type of notice to the nonmoving party

18   in order to give them the same opportunity to respond to it as

19   a motion for summary judgment.  So, but I think that for

20   today's purposes, I'm just going to go ahead and grant the

21   motion for summary judgment except as to the second cause of

22   action.  Okay.

23           MS. CAMARATA:  The motion to dismiss?

24           THE COURT:  Thank you.

25           MS. CAMARATA:  Thank you, Your Honor.

```
 1           THE COURT:  The motion to dismiss.  That's correct.

 2   Thank you.

 3           MS. CAMARATA:  Thank you, Your Honor.

 4       (Proceedings concluded at 2:23 p.m.)

 5                        --oOo--

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18                     CERTIFICATE

19       I certify that the foregoing is a correct transcript from

20   the electronic sound recording of the proceedings in the above-

21   entitled matter.

22

23   _____      _____

24   Kathy Rehling                          Date
     Certified Electronic Court Transcriber
25   CET**D-444
```

1                                    INDEX

2   PROCEEDINGS                                                          3

3   WITNESSES

4   -none-

5   EXHIBITS

6   -none-

7   RULINGS

8   Motion to dismiss adversary proceeding, filed by Defendant    10
    FNBN1 (55) - *Granted*
9

10  Motion to dismiss adversary proceeding, filed by Defendant    16
    PennyMac Loan Services (56) - *Granted as to all causes of
11  action except the second cause of action*

12  END OF PROCEEDINGS                                               18

13  INDEX                                                            19

14

15

16

17

18

19

20

21

22

23

24

25